# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **ALAMEDA COUNTY MEDICAL CENTER,** )<br><br>*et al.* )<br><br><br>**Plaintiffs,** )<br><br>**v.** )<br><br><br>**MICHAEL O. LEAVITT, in his official capacity as Secretary, United States Department of Health and Human Services** )<br><br>*et al.* )<br><br><br>**Defendants.** )<br>_____) | **Civil Action No. 1:08-00422 (JR)**<br>**Description:  TRO/PI** |

**MOTION OF THE COMMITTEE OF INTERNS AND RESIDENTS, SEIU FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFFS ALAMEDA COUNTY MEDICAL CENTER, NATIONAL ASSOCIATION OF PUBLIC HOSPITALS AND HEALTH SYSTEMS, AMERICAN HOSPITAL ASSOCIATION, AND ASSOCIATION OF AMERICAN MEDICAL COLLEGES. STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT.**

The Committee of Interns and Residents ("CIR") hereby moves for leave to file its *amicus curiae* brief, submitted with this motion, in support of plaintiffs Alameda County Medical Center, National Association of Public Hospitals and Health Systems, American Hospital Association, and Association of American Medical Colleges.

## THE ISSUE

This Court is being asked to grant declaratory and injunctive relief barring the enforcement of and declaring unlawful a Medicaid rule issued by Defendant United States Department of Health and Human Services ("HHS") through Defendant Centers for Medicare & Medicaid Services ("CMS").

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT.

### 1.    Description of *Amicus Curiae* and Its Interest

The Committee of Interns and Residents ("CIR/SEIU") is an affiliate of the 1.3 million member Service Employees International Union, the largest health care union in the United States. CIR/SEIU was founded in 1957, and is the largest union of resident physicians ("housestaff" or "residents") in the Country, representing more than 12,000 housestaff members in California, Florida, Massachusetts, New Jersey, New Mexico, New York, Washington D.C., and Puerto Rico. The CIR/SEIU National Office is located at 520 Eighth Avenue, Suite 1200, New York, NY 10018.

This Court is being asked to grant declaratory and injunctive relief barring the enforcement of and declaring unlawful a Medicaid rule issued by Defendant United States Department of Health and Human Services ("HHS") through Defendant Centers for Medicare & Medicaid Services ("CMS") and published on May 29, 2007 ("the

Rule"), 72 Fed. Reg. 29748.  The enforcement of this rule, which imposes a provider-specific cost limit on Medicaid payments to governmental providers and restricts the permissible sources of a State's contribution to Medicaid expenditures to units of government with direct access to tax revenues, would result in reductions of Medicaid payments in the billions of dollars to the "safety-net" public hospitals that provide comprehensive medical services to low income persons throughout the United States.

CIR/SEIU members are the front line providers of medical care in public safety-net hospitals in California, Florida, Massachusetts, New Jersey, New Mexico and New York.  They staff these teaching hospitals twenty-four hours per day, seven days a week, 365 days a year, providing critical, and in most cases irreplaceable, patient care services. Our members treat poor and vulnerable patients as surgeons in the operating room, as the emergency medicine physicians in the ER, and as the obstetricians in Labor and Delivery. CIR's members are the pediatricians, internists, and family practice physicians that staff the hospital clinics and inpatient floors. They are also the cardiology and pulmonary fellows that cover the intensive care units. Literally every medical specialty, from anesthesiology to urology, is represented within our membership.

The interests of our members and their patients will be adversely affected if HHS's Rule is enforced.  These adverse effects would occur because the sweeping cuts in funding to safety-net hospitals, which will certainly follow the Rule's enforcement, will deprive our members of the resources they require to provide quality care to their patients, lead to the elimination of residency training programs, and the closure of safety-net hospitals altogether.

CIR/SEIU's perspective, therefore, is a valuable one for the Court to consider in this matter.

**2.      Reasons Why an *Amicus Curiae* Brief Is Desirable.**

CIR/SEIU is uniquely suited to assist the Court in this case because the perspective gained by its members from being the front line providers of medical care in our nation's public safety-net hospitals will help the Court gain a more full understanding as to what will likely occur in these hospitals if HHS is permitted to enforce its Rule.

Plaintiffs have consented to CIR/SEIU's filing of an *amicus curiae* brief. Lead Counsel for Defendants has informed CIR/SEIU that Defendants take no position to our filing of an *amicus curiae* brief. If this motion is granted, however, Defendants will want additional time to reply re: Defendants' Cross-Motion to Dismiss, or Alternatively for Summary Judgment, as well as additional pages in their reply brief.

**WHEREFORE,** the Committee of Interns and Residents, SEIU respectfully requests that this motion be granted and that the Court grant it leave to file the attached *amicus curiae* brief in support of the Plaintiffs.

Respectfully Submitted,

April 16, 2008

Wendy L. Kahn (D.C. Bar No. 183855)
Zwerdling, Paul, Kahn & Wolly, P.C.
1025 Connecticut Avenue, N.W., Suite 712
Washington, D.C. 20036
P: (202) 857-5000
F: (202) 223-8417
Email: wlkahn@zwerdling.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| ALAMEDA COUNTY MEDICAL CENTER, ) | |
| ) | |
| *et al.* ) | Civil Action No. 1:08-00422 (JR) |
| ) | Description:  TRO/PI |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | |
| MICHAEL O. LEAVITT, in his official ) | |
| capacity as Secretary, United States ) | |
| Department of Health and Human ) | |
| Services ) | |
| ) | |
| *et al.* ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

_____)

BRIEF OF *AMICUS CURIAE* COMMITTEE OF INTERNS
AND RESIDENTS, SEIU, IN SUPPORT OF PLAINTIFFS
ALAMEDA COUNTY MEDICAL CENTER, NATIONAL
ASSOCIATION OF PUBLIC HOSPITALS AND HEALTH
SYSTEMS, AMERICAN HOSPITAL ASSOCIATION, AND
ASSOCIATION OF AMERICAN MEDICAL COLLEGES

## **TABLE OF CONTENTS**

I.  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

II.  DESCRIPTION OF AMICUS CURIAE AND ITS INTEREST . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  IF THE RULE IS ENFORCED IT WOULD CAUSE
    IRREPARABLE HARM TO SAFETY-NET HOSPITALS
    THROUGHOUT THE NATION AS WELL AS TO LOW
    INCOME PERSONS WHO RELY ON THESE HOSPITALS
    FOR COMPREHENSIVE MEDICAL CARE . . . . . . . . . . . . . . . . . . .5

        1.  Prohibiting Above-Cost Medicaid Payments To
        Safety-Net Hospitals Will Prevent Them From
        Providing Essential Health Care Services To Low
        Income Persons Throughout The United States . . . . . . . . . . . . . 5

        2.  If Medicaid Payments To Safety-Net Hospitals Are Cut,
        Low Income Persons That Rely On These Hospitals Will
        Be Denied Medical Care . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.  The Funding Cuts That Will Come If HHS' Rule Is
        Enforced Will Hurt The Training Of Housestaff . . . . . . . . . . . . 10

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

1

# I.

# <u>TABLE OF AUTHORITIES</u>

72 Fed. Reg. 29748 (May 29, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Pub. L No. 97-35, § 2174, 95 Stat. 357 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

National Association of Public Hospitals and Health Systems, *The Impact of the*
        *Medicaid Regulations: Communities and Patients at Risk, <u>www.naph.org</u>*
        (March 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Office of Management and Budget, *Analytical Perspectives: Budget of the U.S.*
        *Government, Fiscal Year 2009, Table 26-6 (February 2008)* . . . . . . . . . . . . . 5

United States House of Representatives, Committee on Oversight and
        Government Reform, Majority Staff, *The Administration's Medicaid*
        *Regulations: State-By-State Impacts.* Appendix C (March 2008) . . . . . . . . . . .7

United States House of Representatives, Committee on Oversight and Government
        Reform, Majority Staff, *The Administration's Medicaid Regulations:*
        *Summaries of State Responses* (March 3, 2008) . . . . . . . . . . . . . . . . . . . . . . 6-10

## II.

## DESCRIPTION OF AMICUS CURIAE AND ITS INTEREST

The Committee of Interns and Residents ("CIR/SEIU") is an affiliate of the 1.3 million member Service Employees International Union, the largest health care union in the United States. CIR/SEIU was founded in 1957, and is the largest union of resident physicians ("housestaff" or "residents") in the Country, representing more than 12,000 housestaff members in California, Florida, Massachusetts, New Jersey, New Mexico, New York, Washington D.C., and Puerto Rico.

This Court is being asked to grant declaratory and injunctive relief barring the enforcement of and declaring unlawful a Medicaid rule issued by Defendant United States Department of Health and Human Services ("HHS") through Defendant Centers for Medicare & Medicaid Services ("CMS") and published on May 29, 2007 ("the Rule"), 72 Fed. Reg. 29748. The enforcement of this rule, which imposes a provider-specific cost limit on Medicaid payments to governmental providers and restricts the permissible sources of a State's contribution to Medicaid expenditures to units of government with direct access to tax revenues, would result in reductions of Medicaid payments in the billions of dollars to the "safety-net" public hospitals that provide comprehensive medical services to low income persons throughout the United States.

CIR/SEIU members participate in residency training programs that last anywhere from three to eight years. A major component of residency training involves providing direct medical care, under the supervision of fully trained attending physicians. CIR/SEIU members are the front line providers of medical care in public safety-net hospitals in California, Florida, Massachusetts, New Jersey, New Mexico and New York.

They staff these teaching hospitals twenty-four hours per day, seven days a week, 365 days a year, providing critical, and in most cases irreplaceable, patient care services. Our members treat poor and vulnerable patients as surgeons in the operating room, as the emergency medicine physicians in the ER, and as the obstetricians in Labor and Delivery. CIR's members are the pediatricians, internists, and family practice physicians that staff the hospital clinics and inpatient floors. They are also the cardiology and pulmonary fellows that cover the intensive care units. Literally every medical specialty, from anesthesiology to urology, is represented within our membership.

The interests of our members and their patients will be adversely affected if HHS's Rule is enforced. These adverse effects would occur because the sweeping cuts in funding to safety-net hospitals, which will certainly follow the Rule's enforcement, will deprive our members of the resources they require to provide quality care to their patients, lead to the elimination of residency training programs, and the closure of safety-net hospitals altogether.

CIR/SEIU's perspective, therefore, is a valuable one for the Court to consider in this matter.

### III.

### <u>ARGUMENT</u>

**A.    IF THE RULE IS ENFORCED IT WOULD CAUSE IRREPARABLE
HARM TO SAFETY-NET HOSPITALS THROUGHOUT THE NATION
AS WELL AS TO LOW INCOME PERSONS WHO RELY ON THESE
HOSPITALS FOR COMPREHENSIVE MEDICAL CARE.**

**1.    Prohibiting Above-Cost Medicaid Payments To Safety-Net Hospitals
Will Prevent Them From Providing Essential Health Care Services
To Low Income Persons Throughout The United States.**

Medicaid payments to both governmental and non-governmental providers are currently subject to a flexible upper payment limit that is based on amounts that would be paid to the providers under Medicare payment principles. These Medicare principles allow for above-cost payments to both governmental and non-governmental providers.

Public safety-net hospitals have, for decades, made funding decisions and created budgets with the assumption that above-cost Medicaid payments would continue. The rule HHS wishes to enforce would eliminate the flexible upper payment limit for government providers and, for the first time since 1981, impose a cost limit that would prohibit payments to government providers that exceeded charges for services provided.[1] If this rule is enforced safety-net hospitals will be required to revise their budgets and make cuts to, or outright eliminate, the services that the poor and vulnerable patients in their communities rely on.

Examples of services provided by safety-net hospitals that would likely be

---

[1] Congress explicitly rejected a cost-limit prohibiting payments to providers that exceeded charges for services provided in 1981. Pub. L No. 97-35, § 2174, 95 Stat. 357 (1981).

threatened include: [2]

- Services to patients living in rural areas. Summaries at 20, 23, 35, and 42.

- Services to the mentally ill. *Id*. at 22 and 30.

- Services to the mentally retarded and developmentally disabled. *Id*. at 30.

- Early intervention programs. *Id*.

- Care for the medically indigent. [3]

- Community and hospital based clinics. Impact at 2.

- Trauma services. *Id*.

- Prescription medicine programs. *Id*.

Because above-cost Medicaid payments often make up a significant portion of a State's Medicaid budget, it is not always possible to determine all of the services that are attributable to these payments. The list set forth above, therefore, can only provide a partial picture as to how important these payments are to safety-net health care providers.

In sum, the ability to collect above-cost Medicaid payments allows governmental health care providers to fulfill Medicaid's mission by making it possible for safety-net hospitals and the medical residents that work in them to provide quality health care to the nation's poorest and most vulnerable citizens. If safety-net hospitals are, for the first time in decades, prohibited from receiving above-cost Medicaid payments, important services that these citizens rely on will be cut or even eliminated.

---

[2] United States House of Representatives, Committee on Oversight and Government Reform, Majority Staff, *The Administration's Medicaid Regulations: Summaries of State Responses* (March 3, 2008)("Summaries").

[3] National Association of Public Hospitals and Health Systems, *The Impact of the Medicaid Regulations: Communities and Patients at Risk, www.naph.org* (March 2008)("Impact") at 1.

2.      **If Medicaid Payments To Safety-Net Hospitals Are Cut, Low Income Persons That Rely On These Hospitals Will Be Denied Medical Care.**

The enforcement of a rule that imposes a provider-specific cost limit on Medicaid payments to governmental providers and restricts the permissible sources of a State's contribution to Medicaid expenditures to units of government with direct access to tax revenues would have a devastating effect on the public hospitals that make up this nation's health care safety-net.

OMB projections estimate that imposing this "cost limit" rule will result in a reduction of federal funds to the states of $5.7 billion over five years.[4] However, this projection, according to a report by the Majority Staff of the House Committee on Oversight and Governmental Reform, is a gross understatement.  According to the report, the cost limit rule for public employers would result in cuts in Medicaid funding to the states of more than $21.1 billion dollars over the next five years.[5]

These cuts would greatly impede public hospitals, and the resident physicians working in them, from fulfilling one of their primary missions, to serve this nation's poorest and most vulnerable populations. Medicaid Directors throughout the Country have reported that these cuts are likely to have the following impact:[6]

- California would lose $943.6 million in Medicaid funding in 2008 and $4,718 million over five years. California's Medicaid Director reported that the rule "would have devastating impacts to California's safety-net hospitals." Summaries at 4.

- New York would lose $550 million in Medicaid funding in 2008

---

[4] Office of Management and Budget, *Analytical Perspectives: Budget of the U.S. Government, Fiscal Year 2009*, Table 25-6 (February 2008)
[5] United States House of Representatives, Committee on Oversight and Government Reform, Majority Staff, *The Administration's Medicaid Regulations: State-By-State Impacts.* Appendix C (March 2008).
[6] Summaries, supra n.2.

and $2,750 million over five years. New York's Medicaid Director reported that the cuts would have "particularly negative consequences on the NYC Health and Hospitals Corporation, services for the mentally ill, early intervention programs, and New York's nationally recognized service systems for the mentally retarded and developmentally disabled." *Id.* at 30.

- North Carolina would lose $430.6 million in Medicaid funding in 2009 and $2,187 million over five years. North Carolina's Medicaid Director reported that these cuts would "diminish the ability of the State to provide basic health care and services." *Id.* at 31.

- Illinois would lose $255 million in Medicaid funding in 2008 and $1,300 million over five years. Illinois' Medicaid Director reported that these cuts would cause a "serious funding problem" for their health care system. *Id*. at 13.

- Michigan would lose $225.9 million in Medicaid funding in 2008 and $1,254.4 million over five years. Michigan's Medicaid Director reported that the cuts would likely impact "all Medicaid beneficiaries" in the state. *Id.* at 22.

- Louisiana would lose $222 million in Medicaid funding in 2008 and $1,209 million over five years. *Id*. at 18.

- Tennessee would lose $200 million in Medicaid funding in 2008 and $1,000 million over five years. Tennessee's Medicaid Director reported that these cuts would "obviously have a dramatic effect on Medicaid applicants and beneficiaries in Tennessee." *Id*. at 40.

- New Mexico would lose $168.7 million in Medicaid funding in 2009 and $1,444.3 million over five years. New Mexico's Medicaid Director reported that these cuts would result in a decrease in service providers for Medicaid applicants. *Id*. at 29.

- Texas would lose $127 million of Medicaid funding in 2008 and $2,200 million over the next five years. Texas' Medicaid Director estimated that "each year, more than 185,000 Texans would be at risk of not receiving hospital services or experiencing a significant reduction in services. *Id.* at 41.

- Colorado would lose $142.2 million in Medicaid funding in 2008 and $711 million over five years. Colorado's Medicaid Director reported that these cuts would "put the financial stability of the entire safety-net provider community in Colorado at risk." *Id*. at 5.

- Minnesota would lose $50.5 million in Medicaid funding in 2008 and $275.1 million over five years.  Minnesota's Medicaid Director reported that these cuts would place "an undue burden on states with rural populations." *Id*. at 23.

- Utah would lose $40.7 million in Medicaid funding in 2008 and $216 million over five years.  Utah's Medicaid Director reported that these cuts would put small rural hospitals in the state at risk. *Id*. at 42.

- Maine would lose $36 million in Medicaid funding in 2009.  The Medicaid Director could not specify Maine's losses over the next five years. *Id.* at 19.

- Georgia would lose $30.2 million in Medicaid funding in 2008 and $1,478 million over the next five years.  *Id.* at 10.

- Missouri would lose $22.1 million in Medicaid funding in 2008 and $110.7 million over the next five years.  *Id.* at 24.

- Kentucky would lose $21 to $26 million in Medicaid funding in 2008 and $118 million over five years.  Kentucky's Medicaid Director reported that these cuts would result in losses to the public hospitals "who are an essential part of the health care safety network in this state." *Id.* at 17.

- New Jersey would lose $3 million in Medicaid funding in 2008 and $96.7 million over the next five years.  *Id.* at 28.

- Wisconsin expects that it would lose $3 million in Medicaid funding in 2008 and $15 million over the next five years.  The Wisconsin Medicaid Director reported that the "loss could be significantly higher depending on the interpretation of the rule."  *Id.* at 28

- Ohio would lose $1.4 million in Medicaid funding in 2008 and $7.4 million over the next five years.  *Id.* at 33.

- Virginia would lose $1.4 million in Medicaid funding in 2009 and $7.7 million over the next five years. The Virginia Medicaid Director reported that cuts could result in the loss of services by small government providers. *Id.* at 43.

- The Arizona Medicaid Director could not specify what Arizona's losses would be but reported that they "expect the impact to be significant." *Id.* at 3.

- The Indiana Medicaid Director could not specify what Indiana's losses would be but reported that the State would "substantially reduce services for Medicaid patients and the uninsured." *Id.* at 14

- The New Hampshire Medicaid Director could not specify what New Hampshire's losses would be but reported that it would damage the state's ability to provide insurance for 3,000 children. *Id.* at 27.

- The Oregon Medicaid Director could not specify what Oregon's losses would be but reported that the cuts may cause "smaller, typically rural providers to withdraw from providing Medicaid services." *Id.* at 35

As detailed above, these cuts would force public safety-net hospitals to reduce, and in some cases eliminate, vital health care services for poor and vulnerable patients. As these patients typically are uninsured or underinsured, it is likely that they will be unable to obtain the services that these hospitals provide somewhere else. These cuts, therefore, will cause grave harm to the public that Medicaid is supposed to protect.

Furthermore, the fact that safety-net hospitals will have to react to huge cuts almost immediately will make it nearly impossible for these hospitals to adequately plan for how to absorb the cuts. Clinics will close, vital personnel will be laid off, and patients will show up for treatment only to be turned away. In short, these cuts will cause chaos in our nation's safety-net hospitals.

### 3.    The Funding Cuts That Will Come If HHS' Rule Is Enforced Will Hurt The Training Of Housestaff.

The Rule that HHS wishes to enforce may not be specifically designed to hurt the training of physicians. However, the cuts in Medicaid funding of the magnitude described above will almost certainly do so.

First, a large percentage of CIR/SEIU's members learn how to become physicians by treating patients in the operating rooms, emergency rooms, and clinics in our public safety-net hospitals. If funding cuts result in the loss of ancillary staff, the housestaff

working in these hospitals will be forced to spend valuable physician time performing the services that the ancillary workers currently provide, rather than treating patients.

Second, funding cuts would also likely cripple the ability of safety-net hospitals to attract and competitively compensate quality attending physicians to supervise and instruct housestaff, which is a necessity in any teaching hospital.

Third, residency training programs in public sector hospitals are obligated to ensure that housestaff perform a certain number of procedures. The loss of public funding, which would result in services being cut, clinics being closed, and less patients being seen would make it extremely difficult for residency training programs to meet their obligations. This will likely lead to the elimination of training programs and to decisions by teaching hospitals, which are already cash strapped, to consider becoming non-teaching hospitals.

## IV.

## CONCLUSION

The funding cuts that will be unleashed on our public safety-net hospitals, if HHS's Rule is enforced, will force these hospitals to cut and, in many cases, eliminate essential health care services to the vulnerable and low income populations Medicaid was designed to protect. The elimination of these services will also hurt CIR/SEIU's members by depriving them of the opportunity to treat these patients.

CIR/SEIU respectfully submits, therefore, that the declaratory and injunctive relief sought by the Plaintiffs should be granted.

Respectfully submitted,

_Wendy L. Kahn_

Wendy L. Kahn (D.C. Bar No. 183855)
Zwerdling, Paul, Kahn & Wolly, P.C.
1025 Connecticut Avenue, N.W., Suite 712
Washington, D.C. 20036
P: (202) 857-5000
F: (202) 223-8417
Email: wlkahn@zwerdling.com

## CERTIFICATE OF SERVICE

I hereby certify that on the //th day of April, 2008, I filed the foregoing:

MOTION OF THE COMMITTEE OF INTERNS AND RESIDENTS, SEIU
FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFFS
ALAMEDA COUNTY MEDICAL CENTER, NATIONAL ASSOCIATION OF
PUBLIC HOSPITALS AND HEALTH SYSTEMS, AMERICAN HOSPITAL
ASSOCIATION, AND ASSOCIATION OF AMERICAN MEDICAL
COLLEGES STATEMENT OF POINTS AND AUTHORITIES IN
SUPPORT;

BRIEF OF *AMICUS CURIAE* COMMITTEE OF INTERNS AND RESIDENTS,
SEIU, IN SUPPORT OF PLAINTIFFS ALAMEDA COUNTY MEDICAL
CENTER, NATIONAL ASSOCIATION OF PUBLIC HOSPITALS AND
HEALTH SYSTEMS, AMERICAN HOSPITAL ASSOCIATION, AND
ASSOCIATION OF AMERICAN MEDICAL COLLEGES; and

PROPOSED ORDER GRANTING COMMITTEE OF INTERNS AND
RESIDENTS, SEIU LEAVE TO FILE *AMICUS CURIAE* BRIEF IN
SUPPORT OF PLAINTIFFS ALAMEDA COUNTY MEDICAL CENTER,
NATIONAL ASSOCIATION OF PUBLIC HOSPITALS AND HEALTH
SYSTEMS, AMERICAN HOSPITAL ASSOCIATION, AND
ASSOCIATION OF AMERICAN MEDICAL COLLEGES

with the Court using the Court's generic ECF e-mail address, and sent the same via e-mail to:

Tamra T. Moore, Esq. (tamra.moore@usdoj.gov)
Lead Counsel for Defendants
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530

William C. Crenshaw, Esq. (wcrenshaw@pogolaw.com)
POWELL GOLDSTEIN LLP
901 New York Avenue, NW, 3rd Flr.
Washington, DC 20001

Nathan A. Brown, Esq. (nathan.brown@ropesgray.com)
ROPES & GRAY
700 12th Street, NW
Washington, DC 20005

WENDY L. KAHN

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALAMEDA COUNTY MEDICAL CENTER, *et al.* <br><br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, in his official capacity as Secretary, United States Department of Health and Human Services *et al.* <br><br><br> Defendants. | Civil Action No. 1:08-00422 (JR) <br> Description: TRO/PI |

**PROPOSED ORDER GRANTING COMMITTEE OF INTERNS AND RESIDENTS, SEIU LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFFS ALAMEDA COUNTY MEDICAL CENTER, NATIONAL ASSOCIATION OF PUBLIC HOSPITALS AND HEALTH SYSTEMS, AMERICAN HOSPITAL ASSOCIATION, AND ASSOCIATION OF AMERICAN MEDICAL COLLEGES.**

Upon consideration of the Motion of the Committee of Interns and Residents, SEIU for leave to file *amicus curiae* brief in support of Plaintiffs, the Court finds that:

1.      The members of Committee of Interns and Residents ("CIR/SEIU") as well as their patients will be adversely affected if the Medicaid rule ("the Rule") issued by Defendant United States Department of Health and Human Services ("HHS") through Defendant Centers for Medicare & Medicaid Services ("CMS"),  72 Fed. Reg. 29748 is enforced.

2.      An *amicus curiae* brief filed by CIR/SEIU will help the Court gain a fuller understanding as to what will likely occur in safety-net hospitals throughout the United States if HHS is permitted to enforce the Rule.

3       Plaintiffs have consented to CIR/SEIU's submission of an *amicus curiae* brief.

4.      Defendants take no position to CIR/SEIU's filing of an *amicus curiae* brief, but want additional time to reply re: Defendants' Cross-Motion to Dismiss, or Alternatively for Summary Judgment, as well as additional pages in their reply brief.

Thereby, it is hereby

ORDERED that the Motion of the Committee of Interns and Residents, SEIU for leave to file *amicus curiae* brief in support of Plaintiffs is GRANTED for the reasons stated above; and it is

ORDERED that the Brief Of *Amicus Curiae* Committee Of Interns And Residents, SEIU, In Support Of Plaintiffs Alameda County Medical Center, National Association Of Public Hospitals And Health Systems, American Hospital Association, And Association Of American Medical Colleges be filed in this matter.

DATED: _____, 2008    By:_____

                                         James Robertson
                                         United States District Court Judge

Serve on:

Tamra T. Moore, Esq.
Lead Counsel for Defendants
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
tamra.moore@usdoj.gov
(202) 514-8095

William C. Crenshaw, Esq.
POWELL GOLDSTEIN LLP
901 New York Avenue, N.W., Third Floor
Washington, DC  20001
(202) 347-0066
wcrenshaw@pogolaw.com

Nathan A. Brown, Esq.
ROPES & GRAY LLP
700 12th Street, N.W., Suite 900
Washington, DC  20005
(202) 508-4600
nathan.brown@ropesgray.com

Wendy L. Kahn, Esq.
Zwerdling, Paul, Kahn & Wolly, P.C.
1025 Connecticut Ave., NW, Suite 712
Washington, DC 20036
(202) 857-5000
wlkahn@zwerdling.com